UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jimmie Dale Jackson,                                         Civil No. 09-2139 JMR/AJB

            Petitioner,

v.                                         **REPORT AND RECOMMENDATION**

Timothy Wengler, Warden,

            Respondent.

      This matter is before the Court, Magistrate Judge Arthur J. Boylan, on Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Petitioner Jimmie Dale Jackson is a prisoner confined at the Minnesota Correctional Facility at Moose Lake, Minnesota, as the result of a conviction and sentencing in Hennepin County District Court. Mr. Jackson was convicted by a jury in February 2006, on a charge of criminal sexual conduct in the first degree. The conviction relates to a sexual assault that occurred in August 2000, for which the petitioner was charged in January 2005, based upon a DNA "cold hit." Jackson was sentenced to a prison term of 144 months on April 18, 2006. The action has been referred to the magistrate judge for report and recommendation to the district court under 28 U.S.C. § 636 and Local Rule 72.2(b).

      Jackson alleges in his petition that: (1) identification evidence presented at trial was inconsistent and uncorroborated, and therefore insufficient to support the verdict; (2) the Minnesota statute that authorizes suspicionless searches, Minn. Stat. § 609.117,[1] is

---

[1] Minn. Stat. § 609.117 provides in pertinent part:

    **Subdivision 1. Upon sentencing.** If an offender has not already done so, the court shall order an offender to provide a biological specimen for the purpose of

unconstitutional because it authorizes warrantless searches that are not based upon probable cause; (3) his constitutional rights were violated as a result of law enforcement's comparison of his DNA profile with the previously unidentified DNA obtained from the sexual assault victim; (4) a statement he made to law enforcement was the fruit of the unlawful DNA comparison; and (5) the result of a second DNA comparison involving a DNA sample taken directly from him was the fruit of the prior unlawful DNA database search. Respondent opposes this § 2254 action, asserting that the petitioner did not fairly present his federal constitutional claim regarding insufficiency of identification evidence in state court, and he has procedurally defaulted on the claim. Respondent further contends that the collection of a DNA sample pursuant to Minn. Stat. § 609.117 was not in violation of the United States Constitution or federal law, and the petitioner's claims relating to suspicionless searches and DNA comparisons must therefore fail. For the reasons stated below, it is recommended that the petition [Docket No. 4] be dismissed with prejudice.

---

DNA analysis as defined in section 299C.155 when:

> (1) the court sentences a person charged with committing or attempting to commit a felony offense and the person is convicted of that offense or of any offense arising out of the same set of circumstances;

The biological specimen or the results of the analysis shall be maintained by the Bureau of Criminal Apprehension as provided in section 299C. 155.

Minn. Stat. § 299C.155, subd. 3 requires the BCA to adopt uniform procedures and protocols for DNA analysis of biological specimens and to establish a centralized system for cross-referencing data obtained from DNA analysis to allow use by authorized law enforcement personnel for identification purposes.

**Background[2] and Claims**

Petitioner Jimmie Dale Jackson was convicted of first degree criminal sexual conduct involving the use of a dangerous weapon. The sexual assault, with forcible vaginal penetration, occurred on August 19, 2000. The attack was promptly reported to law enforcement and the seventeen-year-old victim was taken to a hospital and examined by a sexual-assault nurse. A sample of the unknown assailant's DNA was obtained by way of a vaginal swab and sent to the Minnesota Bureau of Criminal Apprehension ("BCA"). The sample was tested and the DNA profile was entered into the BCA database. No match was found in the initial database search, and the crime went unsolved at that time.

Jimmie Jackson was convicted of aggravated robbery in 2003, and pursuant to Minn. Stat. § 609.117, he was required to provide a blood sample that was analyzed to create a DNA profile for entry into the BCA database. In December 2004, a periodic BCA database search was performed and Mr. Jackson's DNA was matched to the forensic DNA sample obtained from the juvenile victim in the August 2000 sexual assault. By criminal complaint filed in Hennepin County in January 2005, the petitioner was charged with first-degree criminal sexual conduct. A biological specimen was obtained directly from the petitioner in March 2005, and the DNA analysis of the sample provided a match consistent with the previous "cold hit" match.

In testimony at trial the victim described the assailant as a black male in his late twenties, six-foot-one in height, 210 pounds in weight, with short hair, a Chicago accent, and jagged or broken teeth. A BCA forensic scientist testified that the DNA profile obtained from

---

[2] State v. Jackson, 741 N.W.2d 146, 147-48 (Minn. App. 2007).

the victim was a match to Mr. Jackson's DNA, to the exclusion of essentially all unrelated individuals in the world population. The petitioner also testified at the trial and stated that he had met the victim at a bar and invited her to attend a party at his home. Though he denied raping the juvenile, Jackson testified that is was possible that he might have had sex with her. A defense expert testified that the method used by the BCA to compare DNA profiles is not generally accepted in the scientific community.

**Procedural History.** Petitioner Jimmie Jackson was convicted of sexual assault by jury verdict returned in February 2006. He was sentenced to a 144-month prison term in April 2006. The sentence was to be served consecutive to a robbery sentence that he was already serving. Jackson appealed his sexual assault conviction to the Minnesota Court of Appeals in July 2006, and the verdict was affirmed in a decision[3] filed on November 13, 2007. The petitioner filed a Petition for Review of the Court of Appeals Decision with the Minnesota Supreme Court,[4] and the Supreme Court denied the request for further review on October 21, 2008.[5] The Petition for Writ of Habeas Corpus pursuant to § 2254 that is now before the court was filed on August 14, 2009, and the respondent's return was filed on September 21, 2009. In this case, Mr. Jackson reasserts his appellate claims, alleging insufficiency of identification evidence, along with claims relating to a challenge to the constitutionality of DNA collection practices pursuant to Minn. Stat. § 609.117, and subsequent database searches for DNA matches.

**Standard of Review**

Federal habeas corpus relief is only available to a person in custody in violation

---

[3] State v. Jackson, 741 N.W.2d 146. Respondent's App. B.
[4] Resp't Suppl. App. filed January 27, 2010 [Docket No. 13].
[5] Id.

of the Constitution, laws or treaties of the United States. 28 U.S.C. §2254(a); Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

A writ of habeas corpus may issue only upon the showing that the underlying state court adjudication resulted in a decision that (1) was contrary to clearly established federal law, or involved an unreasonable application of clearly established federal law; or (2) was based on an unreasonable determination of the facts in light of evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). This court "presumes that the state court's factual determinations are correct," a presumption that "may be rebutted only by clear and convincing evidence." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000), 28 U.S.C. § 2254(e)(1).

**Exhaustion**

A federal court cannot consider the merits of a habeas corpus petition unless the petitioner can demonstrate exhaustion of all of the available state court remedies. 28 U.S.C. §2254(b) and (c); Rose v. Lundy, 455 U.S. 509, 510, 102 S.Ct. 1198 (1982). Exhaustion of state remedies is required to ensure that state courts have the initial opportunity to review and adjudicate a petitioner's federal constitutional claims. Coleman v. Thompson, 501 U.S. 722, 731 (1991). Both state and federal courts are equally bound to uphold the constitution, and federal courts should refrain from removing cases under state jurisdiction without giving those courts "an opportunity to pass upon the matter." Rose, 455 U.S. at 518 (quoting Darr v. Burford, 339 U.S. 200, 204 (1950). To fulfill this purpose, petitioners must "give state courts a full and fair "opportunity to resolve any constitutional issues." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). If state courts do not receive that full and fair opportunity to rule on a federal

5

constitutional issue, then federal courts should refrain from taking up that issue. Rose, 455 U.S. at 515. A claim is considered to be exhausted when the highest state court has been permitted "a fair opportunity to rule on the factual and theoretical substance of [the] claim." Krimmel v. Hopkins, 56 F.3d 873, 876 (8th Cir.), cert. denied, 116 S.Ct. 578 (1995)); quoting Ashker v. Leapley, 5 F.3d 1178, 1179 (8th Cir. 1993)).

Simply stated, a prisoner cannot raise federal constitutional claims for the first time on petition for federal habeas corpus relief, and to provide the State the necessary opportunity to pass upon and correct alleged violations of its prisoner's federal rights, the prisoner must fairly present his constitutional claim in state court, thereby alerting the state court to the nature of the claim. Carney v. Fabian, 441 F.Supp.2d 1014, 1022 (D.Minn. 2006) (citations omitted). The federal nature of the claim must be fairly presented in state court by reference to a specific federal constitutional right, a federal case, or a state case, which raises a pertinent federal constitutional issue. See Cox v. Burger, 398 F.3d 1025, 1031 (8th Cir. 2005); Abdullah v. Groose, 75 F.3d 408, 411-12 (8th Cir. 1996) (citations omitted). "[O]rdinarily, a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim, in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 32 (2004) (litigant "can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies, or by simply labeling the claim 'federal.'"). However, there must be more than just a "general appeal to a constitutional guarantee." Gray J.D. v. Netherland, 518 U.S. 152, 163 (1996), such that even if the state court examines a state legal issue that is

6

similar to a federal issue, the exhaustion doctrine is not satisfied. Id. At a minimum, a petitioner "must have explicitly referred the state courts to the United States Constitution or federal case law." White v. Dingle, 267 Fed. Appx. 489, 492 (8th Cir. 2008) (quoting Wyldes v. Hundley, 69 F.3d 247, 251 (8th Cir. 1995). In Jones v. Luebbers, the 8th Circuit concluded that the petitioner fairly presented the federal nature of his claims to the state courts by referring to the Due Process Clause of the Fourteenth Amendment. 359 F.3d 1005, 1012 (8th Cir. 2004). This is in contrast to Anderson v. Harless, which held that a broad reference to due process was not a specific reference to a federal constitutional issue. 459 U.S. 4, 7 (1982).

**Sufficiency of Evidence Claim.** Petitioner contends that the identification evidence presented at trial was insufficient to support his conviction. Respondent argues that Mr. Jackson's insufficiency of evidence claim is not exhausted, and is procedurally defaulted, because he failed to properly alert the Minnesota courts as to the existence of a federal constitutional claim, relying instead upon state law theories. In Satter v. Leapley, the Eighth Circuit Court of Appeals held that "[a]ny challenge to the sufficiency of the evidence to convict in a state prosecution is necessarily a due process challenge to the conviction." 977 F.2d 1259, 1262 (8th Cir. 1992) (citing West v. Wright, 931 F.2d 262, 266 (4th Cir.) cert. granted, 502 U.S. 1012 (1991); see also Jackson v. Virginia, 443 U.S. 307, 322 (1979)). The Eighth Circuit explained that because it is necessarily a constitutional issue, an insufficiency of the evidence claim is exhausted even absent a specific reference to a federal constitutional guarantee. Id. Furthermore, in his brief to the Minnesota Court of Appeals[6] the petitioner made express reference to the "Due Process Clause of the Fourteenth Amendment to the United States

---

[6] Resp't App. D at 16.

Constitution" in the heart of his discussion relating to argument on insufficiency of identification evidence, though the Petition for Supreme Court review fails to explicitly state that the petitioner was challenging sufficiency of the evidence in terms of a federal claim. The respondent correctly notes that the constitutional reference in the Court of Appeals petition is made only for the generally unassailable proposition that proof beyond a reasonable doubt of every fact necessary to constitute the crime is required for a conviction. Nonetheless, the context of the constitutional citation persuasively indicates that the petitioner was indeed endeavoring to assert a federal due process claim, despite the Court of Appeals' failure to address the issue as a federal matter. Also, in his Petition for Review by the Minnesota Supreme Court, Mr. Jackson described that claim in the context of his attack on the DNA evidence which was presented a federal claim. Under these circumstances the court concludes that petitioner's insufficiency of identification evidence is exhausted for the purpose of 28 U.S.C. § 2254, and therefore, the issue of procedural default is not presented. The respondent does not contend that remaining federal claims regarding Minn. Stat. § 609.117 are unexhausted.

**Discussion**

     **Seizure of DNA Pursuant to Minn. Stat. § 609.117.** Petitioner contends that a sample of his blood that was drawn following his 2003 robbery conviction, pursuant to Minn. Stat. § 609.117, should be suppressed. He asserts that the blood sample, from which a DNA profile was constructed and placed in a DNA database, was the product of a suspicionless and warrantless search that was conducted in violation of the Fourth Amendment.

     The petitioner's Fourth Amendment claim regarding statutory collection and indexing of DNA from persons convicted of crimes has been consistently rejected by state and

8

federal courts. United States v. Kraklio, 451 F.3d 922, 924 (8th Cir. 2006) (citations omitted). The taking of a blood sample for purposes of DNA collection is properly considered in the context of the Fourth Amendment, and the fundamental concern is the reasonableness of the search. Id. at 923 (citing United States v. Knights, 534 U.S. 112, 118 (2001)). In reviewing DNA indexing statutes such as the one now before the court, the Eighth Circuit has adopted an analytical standard whereby the court considers whether a statutorily authorized search and seizure is reasonable based upon the totality of the circumstances relating to the search and seizure and the nature of the search and seizure itself. Kraklio, 451 F.3d at 924. This approach requires the court to "balance[ ] 'the degree to which [the search and seizure] intrudes upon an individual's privacy' with 'the degree to which [the search and seizure] is needed for the promotion of legitimate governmental interests.'" Id. (quoting Knights, 534 U.S. at 119, 122 S.Ct. 587). Applying this balancing test to the search and seizure of a biological sample that was authorized under Minn. Stat. § 609.117, the court finds that the drawing of blood entailed a minimal intrusion upon the petitioner's privacy which is significantly outweighed by the state's legitimate interest in using DNA as a tool for investigating crime. Kraklio at 924. Therefore, the court concludes that under the totality of circumstances in this instance, Mr. Jackson was not subjected to unreasonable search and seizure in violation of the Fourth Amendment. Suppression of the blood sample was not required and the claim should be dismissed.

**Sufficiency of Identification Evidence.** As previously discussed herein with respect to exhaustion of federal claims, petitioner Jimmie Jackson claims that identification evidence presented at trial was inconsistent and uncorroborated, and therefore was insufficient to support the verdict. Specifically, Mr. Jackson argues that identification evidence was

insufficient because the victim was not able to positively identify him at trial as the attacker, and she initially described the assailant as a person who was five-to-six inches shorter, and seventy pounds lighter, than the petitioner.[7] Mr. Jackson further points to an inconsistency in testimony regarding time[8] to support his evidentiary claim. Finally, petitioner contends that his own testimony to the effect that the victim attended a party at which he may have had consensual sex with her, essentially explained away the presence of DNA evidence.[9]

When reviewing the sufficiency of evidence to support a conviction, a federal court's scope of review is "extremely limited." Sera v. Norris, 400 F.3d 538, 543 (8th 2005) (quoting Whitehead v. Dormire, 340 F.3d 532, 536 (8th Cir. 2003)). A federal judge's personal beliefs regarding the sufficiency of evidence are irrelevant to determining whether the evidence was legally sufficient to support the conviction. Jackson v. Virginia, 443 U.S. 307, 324 (1979). Rather, the analysis is whether "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Nance v. Norris, 392 F.3d 284, 289-290 (8th Cir. 2004) (citing Jackson, 443 U.S. at 324). This requires courts to resolve any conflicting facts or inferences from those facts in favor of the prosecution. Nance, 392 F.3d at 290 (citing Jackson 443 U.S. at 326). This standard of review ensures that it is the fact-finders of a trial, and not reviewing courts, that determine the credibility of testimony and weigh the evidence in determining guilt or innocence.

---

[7] Pet. at 5. At trial, the juvenile victim described the attacker as a six-foot-one black male in his late 20s, weighing 210 pounds, with short hair, a Chicago accent, and jagged or broken teeth. State v. Jackson, 741 N.W.2d 146, 148 (Minn. App. 2007). At the time of the trial, Jackson was six-foot-six and weighed 284 pounds. Id. at 153.

[8] Pet. at 5. The victim testified that her cousin picked her up at 10:00 p.m. on the night of the attack, while the cousin testified that she picked up the victim at midnight. Jackson at 153.

[9] Pet. at 5.

Sera, 400 F.3d at 543.

Petitioner Jimmie Jackson was convicted of first degree criminal sexual conduct involving the use of a dangerous weapon for an assault that occurred on August 19, 2000. He now claims that there was insufficient evidence to convict him because he was not positively identified by the victim and he had an explanation for the DNA.

In considering the evidence in this instance, there is sufficient evidence for a reasonable trier of fact to determine that the attacker had been properly identified and to support the petitioner's conviction for first degree criminal sexual conduct. A jury is in the best position to determine the credibility of a witness' testimony and the weight to be given particular evidence. The state produced evidence that DNA from the petitioner was discovered on a vaginal swab obtained from the victim within a short time after the assault. A jury could reasonably believe the victim's testimony that she had been sexually assaulted, as well as the DNA evidence indicating that the petitioner was the assailant, while not believing the petitioner's testimony that he may have had consensual sex with the victim or defense expert testimony challenging the DNA test results.[10] Furthermore, the jury could easily attach little or no significance to relatively minor discrepancies relating to the victim's description of the attacker's physical stature or her inability to positively identify the petitioner at trial. Likewise, negligible significance could be attributed to testimonial inconsistencies regarding the time that the victim had been picked up by her cousin on the night before the attack. It is within the purview of a jury, and not the petitioner, to decide the importance to be attached to certain evidence, and when viewed in the light most favorable to the conviction, there is sufficient

---

[10] Resp't App. C at 12-13.

evidence for a reasonable jury to find that the petitioner was properly identified as the perpetrator and was guilty of first degree criminal sexual conduct.

**DNA Comparisons.** Petitioner Jackson contends that his constitutional rights were violated as a result of the comparison of the DNA profile obtained pursuant to Minn. Stat. § 609.117 with the previously unidentified DNA obtained from the sexual assault victim.[11] Similarly, petitioner asserts that profile results of the comparison of a blood sample subsequently seized pursuant to Minn. R. Crim. P. 9.02 subd. 2(1)(f)[12] against the database offense sample "was obtained as a direct result of the prior illegal database search."[13] The claims rest wholly upon the incorrect premise that the petitioner's DNA had been unlawfully seized and the "cold hit" comparison itself was therefore the fruit of the unlawful DNA search and seizure. The court has previously concluded herein that the blood sample taken from Mr. Jackson's pursuant to Minn. Stat. § 609.117 was lawfully obtained and that suppression of the DNA profile was not required. Consequently, the "cold hit" comparison was not the fruit of a poisonous tree as defined in Wong Sun v. United States, 371 U.S. 471, 484-88, 83 S.Ct. 407 (1963). Furthermore, the actual comparisons are not properly construed to be a search because "the process of

---

[11] Pet. at 3, ¶ B.
[12] Minn. R. Crim. P. 9.02 subd. 2 states:
> (1) *Disclosures Permitted.* Upon motion of the prosecuting attorney with notice to defense counsel and a showing that one or more of the discovery procedures hereafter described will be of material aid in determining whether the defendant committed the offense charged, the trial court at any time before trial may, subject to constitutional limitations, order a defendant to:
> (f) Permit the taking of sample of the defendant's blood, . . . . provided however, that the court shall not permit a blood test to be taken except upon a showing of probable cause to believe that the test will aid in establishing the guilt of the defendant;

[13] Pet. at 3, ¶ D.

matching one piece of personal information against government records does not implicate the Fourth Amendment." Johnson v. Quander, 440 F.3d 489, 498 (D.C. Cir. 2006) (citing Arizona v. Hicks, 480 U.S. 321, 323-24, 107 S.Ct. 1149 (1987)). Petitioner's claim that the DNA comparisons were conducted in violation of his federal constitution rights should be dismissed.

**Statements.** Petitioner Jimmie Jackson asserts that "a statement taken on December 27, 2004, [should] be suppressed because it was obtained as a direct result of the illegal cold-hit DNA search."[14] Again, the claim relies entirely upon the incorrect assumption that the petitioner's DNA had been unlawfully seized and the "cold hit" comparison itself was therefore the fruit of the unlawful DNA search and seizure. The claim is without merit and should be dismissed.

Based upon all the files, records, and proceedings herein, the magistrate judge makes the following:

## RECOMMENDATION

**It is Hereby Recommended** that Jimmie Dale Jackson's petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Docket No. 4] be **dismissed with prejudice**.

Dated:   February 8, 2010

                                         s/Athur J. Boylan
                                         Arthur J. Boylan
                                         United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written

---

[14] Pet. at 3, ¶ C.

objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before February 23, 2010.